IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| THE PHELAN GROUP, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 2:23-cv-93 |
| v. | § | |
| | § | |
| TOYOTA MOTOR CORPORATION, | § | **JURY TRIAL DEMANDED** |
| TOYOTA MOTOR NORTH AMERICA, INC., | § | |
| TOYOTA MOTOR ENGINEERING & | § | |
| MANUFACTURING NORTH AMERICA, | § | |
| INC., and TOYOTA MOTOR SALES, U.S.A., | § | |
| INC. | § | |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff The Phelan Group, LLC ("Plaintiff" or "Phelan Group"), by and through its attorneys, for its Original Complaint against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota" or "Defendants"), and demanding trial by jury, hereby alleges as follows:

### I.  NATURE OF THE ACTION

1.      This is a civil action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

2.      Defendants design, manufacture, provide, use, sell, offer for sale, import, and/or distribute vehicles and components thereof in the State of Texas and this District that infringe the Patents-in-Suit (as defined below), induce others to commit acts of patent infringement in the State of Texas and this District, and/or contribute to infringement by others in the State of Texas and this District.

3.      Phelan Group seeks past and future damages and prejudgment and post-judgment interest for Defendants' infringement of the Patents-in-Suit.

## II. PARTIES

4.      Phelan Group is a limited liability company organized and existing under the laws of the State of New Mexico.

5.      On information and belief, Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation headquartered at 1 Toyota-Cho, Toyota City, Aichi Prefecture 471-8571, Japan. Toyota Motor Corporation does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and this District.

6.      Defendant Toyota Motor Corporation may be served with process by serving the Texas Secretary of State, James E. Rudder Building, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

7.      On information and belief, Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized and existing under the laws of the State of California with its principal place of business in this District at 6565 Headquarters Dr., W1-3C, Plano, TX 75024. TMNA may be served through its registered agent C T Corporation System, 1999 Bryan Street, Ste. 900, Dallas, TX 75201.  On information and belief, TMNA is registered to do business in the State of Texas and has been since at least June 5, 2014.

8.      On information and belief, TMNA is a wholly owned subsidiary of TMC and is responsible for, *inter alia*, all operations of TMC, including research and development, importing, making, manufacturing, marketing, distributing, offering for sale, and selling automotive vehicles and components from Toyota-managed brands in the United States.  On information and belief,

TMNA works in conjunction with Toyota Financial Services, which is also headquartered in Plano, Texas.

9.      On information and belief, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TMEM") is a corporation organized under the laws of the State of Kentucky with its principal place of business in this District at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  TMEM may be served through its registered agent C T Corporation System, 1999 Bryan Street, Ste. 900, Dallas, TX 75201.  On information and belief, TMNA is registered to do business in the State of Texas and has been since at least April 11, 2005.

10.     On information and belief, TMEM is a wholly owned subsidiary of TMC and is responsible for, *inter alia*, research and development and manufacturing of automotive vehicles and components from Toyota-managed brands in the United States.

11.     On information and belief, Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a corporation organized and existing under the laws of the State of California with is principal place of business in this District at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  TMS may be served through its registered agent C T Corporation System, 1999 Bryan Street, Ste. 900, Dallas, TX 75201.  On information and belief, TMS is registered to do business in the State of Texas and has been since at least April 5, 1974.

12.     On information and belief, TMS is a wholly owned subsidiary of TMC and is responsible for, *inter alia*, sales, marketing, and distribution of automotive vehicles and components from Toyota-managed brands in the United States.

13.     On information and belief, Toyota maintains dealerships throughout this District as its regular and established places of business, at which Toyota has committed acts of infringement and placed the Accused Products and Methods into the stream of commerce, including, at least:

Shapen Toyota, Robbins Toyota, Toyota of Mt. Pleasant, Toyota of Paris, Toyota of Longview, Palestine Toyota, Loving Toyota, Silsbee Toyota, Kinsel Toyota, and Toyota of Plano.

### III.  JURISDICTION AND VENUE

14.    Because this action arises under the Patent Laws of the United States, in particular 35 U.S.C. §271 *et seq*., this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

15.    TMC is subject to jurisdiction in the United States, and specifically in this District, under Fed. R. Civ. P. 4(k)(2).  TMC has contacts with the United States that include, *inter alia*, advertising, offering to sell, selling, and/or importing its vehicles and components thereof throughout the United States, including in this District and the patent infringement claims asserted herein arise directly from TMC's conduct and continuous and systematic activity in the State of Texas and this District.

16.    This Court also has personal jurisdiction over TMNA, TMEM, and TMS because, among other things, (i) TMNA, TMEM, and TMS each maintain a regular and established place of business in the State of Texas and in this District; (ii) TMNA, TMEM, and TMS each employ employees and sells products and services to customers in the State of Texas and in this District; and (iii) the patent infringement claims arise directly from TMNA's, TMEM's, and TMS's conduct and continuous and systematic activity in the State of Texas and this District.

17.    This Court has general and/or specific personal jurisdiction over all of the Defendants in that they have, directly or through agents and/or intermediaries, committed acts within the State of Texas and this District giving rise to this action and/or have established minimum contacts with the State of Texas and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

18.     Upon information and belief, Defendants directly and/or through their agents and/or intermediaries make, use, design, manufacture, distribute, import, offer for sale, sell, and/or advertise their vehicles and components and affiliated services thereof in the State of Texas and this District.

19.     Further, on information and belief, Defendants have placed, and continue to place, infringing vehicles and components thereof into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such vehicles and components thereof are sold in this United States, including in the State of Texas and specifically in this District.

20.     Defendants transact substantial business with entities and individuals in the State of Texas and in this District.

21.     Defendants have committed acts of patent infringement within the State of Texas and this District.

22.     On information and belief, Defendants derive, and have derived, substantial revenue from their infringing activity occurring in the State of Texas and within this District and/or should reasonably expect their actions to have consequences in this State of Texas and this District.

23.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391(b), (c), & (d), and 1400(b) because Defendants either maintain a place of business in the District or are foreign corporations who may be sued in any judicial district.   Moreover, a substantial part of the events and omissions giving rise to the claims at issue occurred in this District, including sale of the infringing vehicles and components thereof.

## IV.  BACKGROUND

<u>PATENTS-IN-SUIT</u>

24.     Over the past ten years, the United States Patent and Trademark Office has awarded at least seven patents to Michael Phelan that have been assigned to Phelan Group, including the six Patents-in-Suit, thereby recognizing the many discoveries made by Michael Phelan relating to systems and methods for authenticating a driver and controlling and/or monitoring the usage of a vehicle.

25.     Phelan Group is an operating company that has been actively developing and commercializing products under the brand name RideBeside.  Phelan Group's products are based on the inventions disclosed in Phelan Group's patents and, among other things, are aimed toward driver safety and training.  Initial product configurations are in road testing and are configured to help drivers form safer driving habits by providing real time feedback regarding driving decisions.

26.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,045,101 (the "'101 Patent," attached as **Exhibit 1**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 2, 2015.

27.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,493,149 (the "'149 Patent," attached as **Exhibit 2**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued November 15, 2016.

28.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,908,508 (the "'508 Patent," attached as **Exhibit 3**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on March 6, 2018.

29.     Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,465 (the "'465 Patent," attached as **Exhibit 4**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

30.    Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,470 (the "'470 Patent," attached as **Exhibit 5**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

31.    Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 11,352,020 (the "'020 Patent," attached as **Exhibit 6**), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 7, 2022.

32.    Together, the foregoing patents are referred to herein as the "Patents-in-Suit." Phelan Group is the assignee of the Patents-in-Suit and has all rights to sue for infringement and collect past and future damages for the infringement thereof.

DEFENDANTS' ACTS

33.    Defendants make, use, sell, offer for sale, distribute, and/or import vehicles and components of vehicles that have systems and methods for driver authentication and monitoring and controlling vehicle usage as either a standard and/or optional feature, including (but not limited to) Toyota Safety Sense and Toyota Connected Services.  These vehicles include (but are not limited to) the 2021 Toyota Camry LE Upgrade, SE Upgrade, XLE, XSE. The Toyota vehicles that come equipped with, for example, Toyota Safety Sense and Toyota Connected Services utilize, without authorization or license, the inventions disclosed in the Patents-in-Suit. The Accused Products and Methods in this case encompass all Toyota vehicles (model year 2015-present) with Toyota Safety Sense and Toyota Connected Services, as well as all other advanced driver assistance systems ("ADAS") and driver authentication systems that operate in a materially similar manner.

34.    By way of illustration only, the 2021 Toyota Camry (LE Upgrade, SE Upgrade, XLE, XSE) equipped with Toyota Safety Sense and Toyota Connected Services meets each and

every element of one or more claims of the Patents-in-Suit, including at least claim 1 of each of the Patents-in-Suit.

35.     The 2021 Toyota Camry equipped with Toyota Safety Sense and Toyota Connected Services includes a suite of systems, features, and/or technology for driver authentication, active safety technologies and ADAS designed to help address accident protection, including, *inter alia*, preventing or mitigating collisions and enhancing safe driving, data recordation including time and speed, alarm generation, specified operational parameters, and operational control of the vehicle including when operational parameters are violated.

36.     On information and belief, Toyota Safety Sense and Toyota Connected Services available in other Toyota models (and vehicles of other model years) function in materially the same manner, and so those vehicles also infringe each of the Patents-in-Suit.

37.     Toyota Connected Services, including by way of example the Toyota App and Remote Connect, provides driver authentication and monitoring and controlling of usage of Toyota vehicles, including as shown below.

38.     Toyota employs Toyota Remote Connect as an authorization method.  Remote Connect authorizes one or more vehicle users and lets an authorized user(s) control select features of a Toyota vehicle, including the 2021 Toyota Camery (LE Upgrade, SE Upgrade, XLE, XSE), using a key fob or smartphone with the Toyota App.[1]  Remote Connect also works with certain smartwatches, Google Assistant, and/or Amazon Alexa.[2]

---

[1] *See, e.g.*,
https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Remote%20Connect/a50de8
80-bf4a-11ec-ad43-55524ad29131?model=Camry&year=2021.
[2] *See, e.g.*,
https://www.toyota.com/content/dam/toyota/brochures/pdf/connectedservices/Remote_Connect_
CFA.pdf; https://evto.ca/what-is-toyota-remote-connect/;

39.     Digital Key technology allows a user to access (e.g., unlock, lock, start) a Toyota vehicle through the Toyota App, which authenticates an encryption key before performing a vehicle function (e.g., unlock, lock, start).[3] The Toyota App permits use of facial recognition or fingerprint identification to log into the app.[4]

40.     With Remote Connect, authorized users (including a primary driver and/or [an] authorized remote driver(s)) can control select features of a Toyota vehicle, including locking and unlocking doors, starting the vehicle, finding the parked vehicle, monitoring guest drivers, and viewing vehicle status notification.[5]

41.     Remote Connect includes, *inter alia*, a Guest Driver Setting, which allows a user to define driving limits for guest drivers (such as valets, kids, etc.), including at least speed limit, curfew, maximum miles limit, area limit or distance limit from set location, maximum time elapsed or total time limit, and ignition/vehicle-on.[6] The Guest Driver Setting of Remote Connect provides Guest Driver Alerts, which notifies the primary driver with push notification alerts if a defined driving limit for the guest driver has been violated.[7]

---

https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Remote%20Connect/a4f41ef0-bf4a-11ec-ad43-55524ad29131?model=Camry&year=2021.

[3] *See* https://www.toyota.com/privacyvts/.

[4] *See* https://support.toyota.com/s/article/Can-I-use-Facial-Reco-10521?language=en_US.

[5] *See, e.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Remote%20Connect/a65f47b0-bf4a-11ec-ad43-55524ad29131?model=Camry&year=2021.

[6] *See, e.g.*, https://support.toyota.com/s/article/What-is-the-Guest-Dri-10222?language=en_US; https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Remote%20Connect/a8e444e0-bf4a-11ec-ad43-55524ad29131?model=Camry&year=2021.

[7] *See, e.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Remote%20Connect/a8fa8c00-bf4a-11ec-ad43-55524ad29131?model=Camry&year=2021.

---

**What is the Guest Driver Settings in the Toyota app?**

---

Guest Driver Settings allows you to pre-set the following conditions and notify the primary driver with push notification alerts if something has been violated.

- **Speed Limit**: Set maximum speed limit in miles per hour for each ignition cycle.
- **Curfew**: Set start and end times for days of the week. Notifications are sent after the curfew has passed and any time the ignition is turned on between the start and end time.
- **Maximum Miles** Driven Limit: Set maximum miles to be driven per day.
- **Distance Limit from Set Location**: Set distance the vehicle is allowed to be driven from a specific location.
- **Maximum Time Elapsed Limit**: Set an amount of time the vehicle is allowed to be driven.
- **Vehicle-On**: Receive a notification every time the vehicle is turned on

---

42.     Toyota Safety Sense provides monitoring and operational control of Toyota vehicles, including as shown below.

43.     For example, Toyota Safety Sense™ 2.5+ includes various advanced driver assistance systems (ADAS), components, and features, including (but not limited to) Pre-Collison System with Pedestrian Detection, Dynamic Radar Cruise Control or Full-Speed Range Dynamic Radar Cruise Control, Lane Departure Alert with Steering Assist, Road Sign Assist, and/or Lane Tracing Assist.[8]

---

[8] https://www.youtube.com/watch?v=tdOJ8wa4YdI.



44.     Pre-Collison System with Pedestrian Detection "is designed to help detect a vehicle or a pedestrian" and "provide an audio/visual alert . . . of a possible collision under certain circumstances" and, if the driver does not react, "the system is designed to automatically brake."[9] The Dynamic Radar Cruise Control or Full-Speed Range Dynamic Radar Cruise Control uses "vehicle-to-vehicle distance control [to help] maintain a preset distance from the vehicle ahead."[10] Lane Tracing Assist "uses the lines on the road and/or preceding vehicles to help keep the vehicle centered in its lane."[11] Lane Departure Alert with Steering Assist "is designed to issue an audio/visual lane departure warning if an inadvertent lane departure is detected" and refine the steering of a driver.[12] Road Sign Assist "is designed to detect speed limit signs, stop signs, Do Not Enter signs and yield signs, and display them on the Multi-Information Display (MID)."[13]

---

[9] *See* https://www.buyatoyota.com/home/vehicles/camry/2021/index.page.
[10] *See id*.
[11]*See id*.
[12] *See* https://www.toyota.com/safety-sense/.
[13] *See* https://www.buyatoyota.com/home/vehicles/camry/2021/index.page.

45.     On information and belief, Toyota vehicles equipped with Toyota Safety Sense and Toyota Connected Services, including the 2021 Camry, use, store, record, and secure vehicle data, including (but not limited to) speed and location information.[14]

46.     On information and belief, Toyota (and its customers) deploy the Accused Products and Methods on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified from those systems as they are made available for inspection and review by Phelan Group.

47.     On information of belief, Toyota also implements contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

48.     Moreover, on information and belief, Toyota implements technical precautions to attempt to thwart customers who would circumvent the intended operation of Toyota's products.

49.     Phelan Group has not obtained discovery about Toyota's infringement and the Court has not construed the meaning of any claims or terms in the Patents-in-Suit.  The factual allegations provided in this Complaint are illustrative and without prejudice to Phelan Group's final infringement contentions.  Further, in providing these allegations, Phelan Group is not implying any particular claim construction or claim scope.

## I.     NOTICE RECEIVED BY TOYOTA

50.     Toyota has received actual and/or constructive knowledge of the Patents-in-Suit and the infringing conduct by way of Toyota's own prosecution activities.

---

[14] *See, e.g.*, https://www.toyota.com/privacyvts/images/doc/privacy-portal.pdf; https://www.m-sedan.com/event_data_recorder-5771.html; https://www.toyota.com/owners/resources/warranty-owners-manuals.camry.2021.

51.     Specifically, Toyota's Patent Nos. 8,958,929 and 9,440,660 cite to Phelan Group's U.S. Patent No. 8,417,415.

52.     Toyota's file history for Patent Application No. 15/196,757, and Patent Nos. 10,493,957, 10,414,275, and 10,860,025 cite to Phelan Group's U.S. Patent No. 9,493,149 and/or the application that issued as the '149 Patent (Pub. No. 2014/0358376).

53.     In several of the foregoing instances, Toyota identified Phelan Group's patent or application as material prior art to Toyota's subsequent claimed inventions.

54.     In other instances, the Examiner identified Phelan Group's patent or application as material prior art to Toyota's subsequent claimed inventions.

55.     As part of its own patent applications, Toyota learned of the '149 Patent no later than August 2018.  On information and belief, while investigating Phelan Group's patents and/or applications, for purpose of its own patent application, Toyota also learned of the '101 Patent no later than June 2015, the '508 Patent no later than March 2018, the '465 Patent no later than April 2019, the '470 Patent no later than April 2019, and the '020 Patent no later than June 2022.

56.     In the alternative, Toyota learned of each of the Patents-in-Suit no later than the date Phelan Group filed this Complaint.

## V.  COUNTS OF PATENT INFRINGEMENT

COUNT ONE
INFRINGEMENT OF U.S. PATENT NO. 9,045,101

57.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

58.     Phelan Group is the assignee and owner of all right, title, and interest to the '101 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

59.    On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

60.    Toyota has been aware of the '101 Patent since June 2015, and thereafter aware of its infringement of the '101 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '101 Patent and its infringement of the '101 Patent.

61.    On information and belief, at least since the date upon which Toyota learned of the '101 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '101 Patent, including at least claim 1 of the '101 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

62.    On information and belief, Toyota has been and is presently actively inducing infringement of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '101 Patent because Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '101 Patent.  Toyota further induces these third parties to directly infringe the '101 Patent by

providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '101 Patent.

63.     On information and belief, Toyota has been and is presently indirectly infringing the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '101 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '101 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '101 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

64.     At least since the date upon which Toyota learned of the '101 Patent and its infringement of the '101 Patent, Toyota has willfully infringed the '101 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '101 Patent.

65.     As a result of Toyota's infringement of the '101 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 9,493,149

66.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

67.     Phelan Group is the assignee and owner of all right, title, and interest to the '149 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

68.     On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

69.     Toyota has been aware of the '149 Patent since August 2018, and thereafter aware of its infringement of the '149 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '149 Patent and its infringement of the '149 Patent.

70.     On information and belief, at least since the date upon which Toyota learned of the '149 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '149 Patent, including at least claim 1 of the '149 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

71.     On information and belief, Toyota has been and is presently actively inducing infringement of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '149 Patent because

Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '149 Patent.  Toyota further induces these third parties to directly infringe the '149 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '149 Patent.

72.     On information and belief, Toyota has been and is presently indirectly infringing the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '149 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '149 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '149 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

73.     At least since the date upon which Toyota learned of the '149 Patent and its infringement of the '149 Patent, Toyota has willfully infringed the '149 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '149 Patent.

74.     As a result of Toyota's infringement of the '149 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT THREE
INFRINGEMENT OF U.S. PATENT NO. 9,908,508

75.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

76.     Phelan Group is the assignee and owner of all right, title, and interest to the '508 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

77.     On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

78.     Toyota has been aware of the '508 Patent since March 2018, and thereafter aware of its infringement of the '508 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '508 Patent and its infringement of the '508 Patent.

79.     On information and belief, at least since the date upon which Toyota learned of the '508 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '508 Patent, including at least claim 1 of the '508 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

80.     On information and belief, Toyota has been and is presently actively inducing infringement of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(b).   Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not

limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '508 Patent because Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '508 Patent.  Toyota further induces these third parties to directly infringe the '508 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '508 Patent.

81.     On information and belief, Toyota has been and is presently indirectly infringing the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '508 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '508 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '508 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

82.     At least since the date upon which Toyota learned of the '508 Patent and its infringement of the '508 Patent, Toyota has willfully infringed the '508 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '508 Patent.

83.     As a result of Toyota's infringement of the '508 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FOUR
INFRINGEMENT OF U.S. PATENT NO. 10,259,465

84.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

85.     Phelan Group is the assignee and owner of all right, title, and interest to the '465 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

86.     On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

87.     Toyota has been aware of the '465 Patent since April 2019, and thereafter aware of its infringement of the '465 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '465 Patent and its infringement of the '465 Patent.

88.     On information and belief, at least since the date upon which Toyota learned of the '465 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '465 Patent, including at least claim 1 of the '465 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

89.     On information and belief, Toyota has been and is presently actively inducing infringement of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '465 Patent because Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '465 Patent.  Toyota further induces these third parties to directly infringe the '465 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '465 Patent.

90.     On information and belief, Toyota has been and is presently indirectly infringing the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '465 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '465 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '465 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

91.     At least since the date upon which Toyota learned of the '465 Patent and its infringement of the '465 Patent, Toyota has willfully infringed the '465 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '465 Patent.

92.     As a result of Toyota's infringement of the '465 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FIVE
INFRINGEMENT OF U.S. PATENT NO. 10,259,470

93.     Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

94.     Phelan Group is the assignee and owner of all right, title, and interest to the '470 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

95.     On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

96.     Toyota has been aware of the '470 Patent since April 2019, and thereafter aware of its infringement of the '470 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '470 Patent and its infringement of the '470 Patent.

97.     On information and belief, at least since the date upon which Toyota learned of the '470 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold

in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '470 Patent, including at least claim 1 of the '470 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

98.     On information and belief, Toyota has been and is presently actively inducing infringement of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '470 Patent because Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '470 Patent.  Toyota further induces these third parties to directly infringe the '470 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '470 Patent.

99.     On information and belief, Toyota has been and is presently indirectly infringing the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '470 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '470 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which

when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '470 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

100.    At least since the date upon which Toyota learned of the '470 Patent and its infringement of the '470 Patent, Toyota has willfully infringed the '470 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '470 Patent.

101.    As a result of Toyota's infringement of the '470 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT SIX
INFRINGEMENT OF U.S. PATENT NO. 11,352,020

102.    Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

103.    Phelan Group is the assignee and owner of all right, title, and interest to the '020 Patent. Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

104.    On information and belief, Toyota, without authorization or license, has been and is presently directly infringing one or more claims of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

105.    Toyota has been aware of the '020 Patent since June 2022, and thereafter aware of its infringement of the '020 Patent, or, alternatively, no later than the date this Complaint was served has been aware of the '020 Patent and its infringement of the '020 Patent.

106.    On information and belief, at least since the date upon which Toyota learned of the '020 Patent and the Accused Products and Methods were first made, used, offered for sale, or sold in the United States or imported into the United States, Toyota, without authorization or license, has been and is presently indirectly infringing one or more claims of the '020 Patent, including at least claim 1 of the '020 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

107.    On information and belief, Toyota has been and is presently actively inducing infringement of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(b).  Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Toyota induces these third parties to directly infringe the '020 Patent because Toyota's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '020 Patent.  Toyota further induces these third parties to directly infringe the '020 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '020 Patent.

108.    On information and belief, Toyota has been and is presently indirectly infringing the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to

infringement of the '020 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Toyota has made, offered to sell, and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '020 Patent.  Toyota knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '020 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

109.    At least since the date upon which Toyota learned of the '020 Patent and its infringement of the '020 Patent, Toyota has willfully infringed the '020 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '020 Patent.

110.    As a result of Toyota's infringement of the '020 Patent, Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.    JURY DEMAND

111.    Phelan Group respectfully demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Phelan Group respectfully requests that this Court enter judgment in its favor and grant the following relief against Defendants:

A.    Judgment that Toyota infringed and continues to infringe one or more claims of each of the Patents-in-Suit;

B.    Judgment that Toyota's infringement was and is willful;

C.      Award Phelan Group damages in an amount adequate to compensate Phelan Group for Toyota's infringement of the Patents-in-Suit, and in no event less than a reasonable royalty, together with prejudgment and post-judgment interest, and an ongoing royalty for continued infringement;

D.      Award Phelan Group treble damages in light of Toyota's willful infringement;

E.      Enter an order finding this to be an exceptional case and award Phelan Group its reasonable attorneys' fees under 35 U.S.C. § 285;

F.      Award Phelan Group its costs of suit; and

G.      Award Phelan Group such other relief as the Court deems just and proper under the circumstances.

DATED: March 7, 2023                Respectfully submitted,

                                    */s/ Andrew DiNovo*
                                    Andrew G. DiNovo
                                    Texas State Bar No. 00790594
                                    adinovo@dinovoprice.com
                                    Nicole E. Glauser
                                    Texas State Bar No. 24050694
                                    nglauser@dinovoprice.com
                                    Adam G. Price
                                    Texas State Bar No. 24027750
                                    aprice@dinovoprice.com
                                    **DINOVO PRICE LLP**
                                    7000 N. MoPac Expressway, Suite 350
                                    Austin, Texas 78731
                                    Telephone: (512) 539-2626
                                    Facsimile:  (512) 539-2627

                                    **COUNSEL FOR PLAINTIFF**
                                    **THE PHELAN GROUP, LLC**